in the radius of two miles from Main and Price streets or to do acts in violation of the spirit and intent of the contract. The defendant cannot be restrained from establishing a coal yard, after the term of two years, beyond the territorial limits set forth in the agreement, but the soliciting of business, the selling and delivery of coal to customers within the territorial limits is carrying on business and a breach of the contract.

The court on final hearing continued the preliminary injunction which it had issued. Defendant appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and conclusions of law and the decree of the court.

*Alex. Simpson, Jr.,* with him *E. Spencer Miller,* for appellant.

*Charles L. McKeehan,* of *Roberts, Montgomery & McKeehan,* for appellees.

PER CURIAM, March 12, 1917:

This appeal is dismissed on the facts found and the legal conclusions reached by the learned chancellor below and on his discussion of the questions involved.

Decree affirmed at appellant's costs.

---

# Edmonds et al., Appellants, *v.* Chandler, Receiver.

*Equity—Bill of review—Judgment of Supreme Court.*

A bill of review, after a decision by the Supreme Court, will not be entertained in the court from which the appeal was taken; and this is particularly true where the purpose of the bill is to correct an alleged error as to matters which were part of the record in the case at the time of the appeal.

Argued Jan. 25, 1917. Appeal, No. 4, May Term, 1917,

by plaintiffs, from decree of C. P. Dauphin Co., Commonwealth Docket 211, No. 219, dismissing Bill of Review in case of Franklin Spencer Edmonds and Charles I. Cronin v. Percy M. Chandler, Receiver of the Tradesmen's Trust Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for review of a decree distributing the assets of an insolvent trust company.

On final hearing the court, McCARRELL, J., filed the following opinion:

The plaintiffs, Franklin Spencer Edmonds and Charles I. Cronin, filed this bill in the above entitled case, and as a part of the proceedings taken therein, against Percy M. Chandler, receiver of the Tradesmen's Trust Company, asking for a review of the decree of distribution made to them as creditors of said trust company. The company was dissolved October 11, 1911, and a receiver duly appointed. As his accounts were filed they were referred to auditors, in pursuance of the Act of 1909, for audit and distribution. These plaintiffs presented their claim, asserting that they had the right to preference over other creditors, because their claim was secured by an arrangement between the Tradesmen's Trust Company and one John Megraw, who was interested in a building operation in West Philadelphia, and had arranged with the trust company to finance the building operation, and had given as security for the moneys needed for that purpose ground rents and mortgages resting upon the various lots of ground included within the limits of the building operation. The plaintiffs became the purchasers of certain of these mortgages and ground rents. The agreement between Megraw and the trust company provided in substance, orally, that the funds received from the sale of ground rents and mortgages should be a trust fund in the hands of the trust company to secure the trust company for its advances of money and the protection of the securities which were to be sold by the trust company

for the purpose of raising funds to complete the building operation. The building operation had not been completed at the time the trust company was dissolved in October, 1911, and these plaintiffs presented to the auditors appointed to make distribution of the money in the hands of the receiver their claim for the mortgages and ground rents which they had purchased and requested a preference over the general creditors in the distribution of the funds in the hands of the receiver because of the agreement to treat the proceeds of the ground rents and mortgages as a trust fund. The plaintiffs offered no special testimony for the purpose of showing their right to a preference, but the auditors examined fully into the matter and heard testimony upon the subject at various dates. They decided that no trust fund had been created, that the money received from sale of ground rents and mortgages covering the Megraw operation had been mixed with the general funds of the company and were a part of the general assets, and therefore refused to allow the plaintiffs a preference, but did allow them their proper percentage from the general fund. Exceptions were taken to the report of the auditors, which exceptions were overruled by this court and an appeal was taken to the Supreme Court by the plaintiffs resulting in the affirmance of our decree of distribution. This opinion affirming our decree was delivered July 3, 1915. The present bill for a review was filed October 19, 1915. An answer has been filed by the receiver and the matter is now before us for decision.

The plaintiffs contend that the testimony of Howard P. Page, quoted in part in their bill, shows a manifest mistake of law and of fact upon the face of the record, and that they are therefore entitled to a review. Their contention is that the testimony of Page shows that a trust fund was in existence covering the proceeds of the ground rents and mortgages connected with the Megraw operation, out of which the plaintiffs were entitled to be paid in preference to other creditors. This testimony

was taken April 26, 1912. No request was made to the auditors or to this court, based upon this testimony for a specific finding that this testimony showed the existence of a trust fund, such as the plaintiff asserted was established for their protection. No exception was taken to the auditors' finding specifically upon that ground, and no application was made either to the auditors or to this court for permission to file exceptions nunc pro tunc. That these plaintiffs knew of the existence of this testimony or by the exercise of reasonable diligence could have known of the same prior to the filing of the auditors' report is reasonably certain. They were present by their counsel at the morning session of the auditors' meeting April 26, 1912. After the matter has been decided by the court of last resort are they entitled now to maintain a bill of review for the purpose of correcting the alleged mistake? This question has been considered by our appellate courts quite frequently. In Dennison v. Goehring, 6 Pa. 402, the plaintiffs had filed a bill, setting out that a trust was created for the benefit of one of the plaintiffs. A final decree was pronounced in favor of the plaintiffs and the defendant appealed to the Supreme Court. After hearing in the Supreme Court the decree of the court below was affirmed. Afterwards the defendant brought his bill of review in the lower court for alleged error in law appearing in the body of the decree. The lower court dismissed the bill of review, and from this decree of dismissal an appeal was taken. Mr. Justice BELL, page 403, uses the following language:

"Thus, the only question presented for determination is, whether a bill of review for errors on the face of the record can be entertained in an inferior tribunal, after final decree of this court on appeal, affirming the decree appealed from."

Numerous decisions upon this subject are then referred to and at page 405 appears the following:

"These decisions are consonant with reason, and the

rule they establish is absolutely necessary to prevent the confusion and mistake which would flow from practically transposing the relative positions of our courts—superior and inferior—an inconvenience which the occasional correction of mistake in a comparatively few cases would not compensate."

To the same effect in George's App., 12 Pa. 260, also Felty v. Calhoon, 147 Pa. 27. The case of Ricketts v. Capwell, 241 Pa. 138, is in accordance with the other decisions, and holds that after a decision by the Supreme Court a bill of review cannot be entertained in the court from which the appeal was taken. The plaintiffs before the auditors and in this court asserted that they were entitled to a preference. The burden was therefore upon them to show by what authority they had this preference: Assigned Estate of the Solicitor's Loan & Trust Co., 3 Pa. Superior Ct. 244. The auditors had before them the testimony of Mr. Page upon the basis of which the right to this bill of review is based, and they had also other testimony upon the same subject, particularly the testimony of Lewis K. Brooks, former treasurer of the company. He testified distinctly and positively that the moneys received by the Tradesmen's Trust Company were mingled with its own funds and became a part of the general assets. Referring to accounts which the trust company had with certain banks, which accounts were marked "Title Department," Mr. Brooks testified as follows:

"Q.—Then do I understand that the purpose of having those title department accounts was not to keep trust funds which would go through the title department, separate and apart from the general funds of the company?

"A.—No, it was not. That was hoped to arrive at some day, but that was not the intention when those accounts opened, nor were those accounts run for that purpose.

"Q.—Then do I understand that the title department

accounts which you have just been speaking of, in those account funds which belonged to other people who had transactions through the title department, were not deposited there for the purpose of keeping those funds intact and separate and apart from the funds of the company?

"A.—No, they were not."

The testimony of Mr. Brooks upon this subject was clear and distinct and positive, and on that the auditors found that the funds received by the trust company from the securities connected with the Megraw operation had been mingled with the general funds of the company, and that no funds had been earmarked as belonging to a trust for the holders of these securities. The testimony of Howard Page, upon whom the plaintiffs now rely and which was taken long before the appeal to the Supreme Court was taken, does not, in our opinion, show that the testimony of Mr. Brooks is incorrect. It seems to be in entire harmony with it. Mr. Page speaks of the account of the trust company with the Corn Exchange National Bank and with the Fourth Street National Bank. These accounts were both in the name of the Tradesmen's Trust Company, and showed that the banks respectively were indebted to the Tradesmen's Trust Company, Title Department, in the sums appearing in the respective accounts. Neither account, however, shows that the funds referred to therein were designated as a trust fund for the holders of the Megraw securities, or in any way indicated that the accounts showed anything else than the indebtedness of the banks to the trust company. The funds referred to in these accounts were not earmarked, and no one could tell therefrom that they were anything else than a statement of the money due from each bank respectively to the trust company. Mr. Page undertakes to analyze and examine the deposits and ascertain from what source moneys credited therein were derived. He said:

"By analyzing the balances I find various points that

they would transfer from this special deposit to the general deposit of the company certain sums of money in the most cases even amounts of $10,000, $15,000 or $25,-000, indicating the amounts deposited in this account, and checking from the last deposit made I find that eight items, the last deposits which were made aggregating $13,658.49, which consisted of the proceeds of the sale of six ground rents."

There does not appear from any testimony to have been anything upon the books of the bank to indicate the source from which the money deposited came, and as already stated, the accounts in these respective banks were not marked as trust funds for the Megraw securities or any other particular securities. The testimony of Mr. Page seems to be consistent with the testimony of Mr. Brooks that these deposits were to the general credit of the trust company and that the funds were mingled with other funds, so that they were apparently a part of the general assets of the trust company. Mr. Page testified:

"I might say that all of the checks drawn upon the title department funds were made payable to the Tradesmen's Trust Company, and redeposited in their general funds."

This is in exact harmony with the testimony of Mr. Brooks. At the time of the hearing before the auditors the plaintiffs submitted all the testimony which they desired to offer to sustain their right to a preference. They were fully heard upon this subject by the auditors, by this court and by the Supreme Court. The auditors had before them all the testimony, both of Mr. Brooks and Mr. Page. Mr. Page was a certified public accountant, employed by the receiver to examine the books of the trust company, and he was called to testify before the auditors as to whether the receiver had charged himself in account with all the money received by him for the trust company. He had never been an officer of the trust company. Mr. Brooks, the treasurer of the com-

pany, testified positively that no trust fund had ever been created or set aside, although the company expected to do so in the future.  The auditors considered all this testimony and concluded that—

"The moneys received by the trust company were mingled with its own funds and became a part of the general assets.  Appellants have failed to identify the funds in such manner as to entitle them to follow and claim it as a trust fund to the exclusion of other creditors."

This conclusion has been affirmed by the Supreme Court in opinion of Mr. Justice FRAZER in Com. v. Tradesmen's Trust Co. (No. 1), 250 Pa. 372, 376.

, We are not satisfied that this conclusion reached by the Supreme Court works any injustice to the plaintiffs. We are of opinion that they are not now entitled to a bill of review.  An appeal to this court for a rehearing on the ground of the alleged after-discovered evidence necessarily must have been refused for the evidence suggested as after-discovered was already on the record and plaintiff must be conclusively presumed to have known of its existence.  Now, after the whole matter has been considered and decided by our court of last resort, we are powerless to grant further relief.  There are perhaps, a thousand creditors of the Tradesmen's Trust Company whose claims are being held up because of the proceedings for the distribution of the funds in the hands of the receiver, and to permit the filing of the bill of review at this late date under the circumstances existing would be without precedent and would unnecessarily and improperly interfere with the rights of other creditors, who are not made parties to the proposed bill of review.

The court dismissed the bill.  Plaintiffs appealed.

*Error assigned* was in dismissing the bill.

*John G. Johnson,* with him *E. Spencer Miller,* for appellants.

152 EDMONDS et al., Appel., *v.* CHANDLER, Receiver.

*Paxson Deeter,* with him *Samuel M. Clement, Jr.,* for appellee.

PER CURIAM, March 12, 1917:

The decree in this case is affirmed, at appellants' costs on the opinion of the learned court below dismissing their bill.

---

# Lung, Appellant, *v.* Sutton et al.

*Negligence—Master and servant—Safe place to work—Patent danger.*

In an action by an employee against his employer to recover damages for personal injuries suffered by plaintiff in consequence of stepping into a hole in the floor of a building in which he was working, a nonsuit was properly entered where it appeared that plaintiff had noticed a number of similar holes and had attempted to cover them but had missed the one into which he fell.

Argued Jan. 26, 1917. Appeal, No. 185, Jan. T., 1916, by plaintiff, from judgment of C. P. No. 1, Philadelphia Co., Sept. T., 1912, No. 4370, refusing to take off nonsuit in case of Harry Lung v. Charles M. Sutton and Richard W. Stephenson, trading as Sutton & Stephenson. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BREGY, P. J.

From the record it appeared that the plaintiff at the time of the accident had been ordered by the defendant firm to put tile upon, and around the base, of a column in a building which was being altered and repaired; that in the floor there were a number of holes and that when the plaintiff went to work he noticed the holes, endeavored to cover them and then went to work. After working three-quarters of an hour he stepped into one